AO 91 (Rev. 5/85) Criminal Complaint / AUSA Kimberly Dunn Abel

# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

v.

DANNY VARELA (a/k/a "D.V.")
RICARDO SANCHEZ, JR. (a/k/a "Rick")
DANIEL TROYA
JUAN C. GUTIERREZ
LIANA LEE LOPEZ (a/k/a "Negra")

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 06-8298-LRJ

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From at least as early as on or about May 4, 2006, until on or about October 25, 2006, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant(s), (Track Statutory Language of Offense)

did knowingly and intentionally combine, conspire, confederate and agree with each other to possess with intent to distribute a controlled substance, that is, five hundred (500) grams or more of a mixture and substance containing a detectable amount of cocaine,

in violation of Title __21__ United States Code, Section(s) __846 and 841(b)(1)(B)__.

I further state that I am a(n) __Task Force Officer with the U.S. Drug Enforcement Administration__ and that this
                                                        Official Title
complaint is based on the following facts:

(Please see attached affidavit.)

Continued on the attached and made a part hereof:  [X] Yes  [ ] No

Signature of Complainant
David Weeks
Task Force Officer, U.S. Drug Enforcement Administration

Sworn to before me, and subscribed in my presence,
upon my finding of probable cause.

October 27, 2006                                      at   Fort Pierce, Florida
Date                                                       City and State

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE                             Signature of Judicial Officer
Name and Title of Judicial Officer

# AFFIDAVIT

I, David Weeks, being duly sworn, depose and say:

1. I am a Task Force Agent with the United States Drug Enforcement Administration (DEA), and have been so assigned since March of 2006. Prior to my assignment with the DEA, I was a police officer for the City of West Palm Beach Police Department (WPBPD), and had been so employed since April of 1997. During my last five years with the WPBPD, I was assigned to the Special Investigations Division, tasked with the responsibility of investigating money laundering and narcotics crimes. As a law enforcement officer, I have been involved in over 50 drug-related arrests, and participated in the execution of over 50 narcotics-related search warrants.

2. The information contained in this affidavit is based upon my personal knowledge, as well as information obtained from other law enforcement officers and civilians. This affidavit is being submitted for the purpose of establishing probable cause to find that the defendants, Danny VARELA (a/k/a "D.V."), Ricardo SANCHEZ, Jr. (a/k/a "Rick"), Daniel TROYA, Juan C. GUTIERREZ and Liana Lee LOPEZ (a/k/a "Negra"), conspired to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §846. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest, it does not contain all of the details about this investigation of which I am aware.

3. On or about October 13, 2006, the St. Lucie County Sheriff's Office and the Palm Beach County Sheriff's Office (PBSO) initiated a homicide investigation into the deaths of Jose Luis Escobedo, Jr., his wife and their two young children. The victims had all suffered fatal gunshot wounds, and they were found along the roadside of Florida's Turnpike, in St. Lucie County, Florida.

4. Law enforcement officers learned that prior to their deaths, the Escobedo family had been residing at 1244 Olympic Circle, in West Palm Beach, Florida. On or about October 14, 2006, in an effort to gather evidence in connection with the homicide investigation, law enforcement officers obtained and executed a search warrant at the victims' Olympic Circle residence. This warrant was reviewed and approved by a state of Florida circuit court judge. During the search, officers recovered items which led them to conclude that the home may have been utilized to facilitate narcotics trafficking. Officers found suspected drug ledgers in the form of numerous handwritten lists of names and/or initials alongside numerical figures and notations. The documents appeared to have been developed for the purpose of maintaining a running tabulation of debts and payments relating to particular people. Also seized from the residence were plastic packaging materials typically used to wrap narcotic substances into kilogram quantities. The evidence seized from the Escobedo residence, combined with information obtained during interviews with family members and associates of the victims, led law enforcement officers to conclude that Jose Luis Escobedo, Jr. was likely involved in cocaine trafficking activities before he was murdered on or about October 13, 2006.

5. During the course of the homicide investigation, evidence was developed linking defendants Danny VARELA, Daniel TROYA and Ricardo SANCHEZ to victim Jose Luis Escobedo, Jr. Based upon this and other evidence, a state of Florida circuit court judge issued a warrant to search a four-bedroom, single family residence located at 6458 Garden Court, in West Palm Beach, Florida, where defendants VARELA, SANCHEZ and TROYA were believed

to reside. During surveillance at that residence subsequent to the murders, VARELA, TROYA and SANCHEZ were all observed regularly entering and exiting the house.

6. The state search warrant for the Garden Court house was issued on or about October 25, 2006, and the search was conducted on the same day. When law enforcement officers arrived to execute the search, they encountered Danny VARELA, Daniel TROYA and Ricardo SANCHEZ. Also present were defendants Juan C. GUTIERREZ and Liana Lee LOPEZ. The following items were found during the search:

- In the front bedroom at the northwest corner of the residence, officers located a dresser. In one drawer of the dresser was approximately 4 grams of suspected crack cocaine. In another drawer of the same dresser, officers located a Florida identification card for defendant Daniel TROYA.

- In a safe inside the northwest corner bedroom, officers found approximately 350 grams of suspected powder cocaine, approximately 30 grams of suspected crack cocaine, and approximately 30 tablets suspected to contain Methylenedioxymethamphetamine (MDMA), also known as "ecstasy."

- In the garage of the residence, inside a shoe box, officers found in excess of 800 grams of suspected cocaine powder and two tablets of suspected MDMA.

- Also in the garage, officers recovered several large trash bags containing what appeared to be packaging materials for kilogram quantities of cocaine. The packaging consisted of thick dark-colored tape which was adhered to clear plastic wrap. On the surface of the plastic wrap was cocaine residue. In excess of ten (10) such kilogram wrappers were found in the trash bags.

3

- Thirteen (13) firearms were found in the garage: two Mac-11, 9mm handguns; one .44 caliber revolver; one .38 caliber revolver; four .22 caliber rifles; one 30-30 rifle; and four shotguns.

- Additional items seized from the garage included drug paraphernalia such as acetone (commonly used as a cutting agent), scales, a suspected drug ledger, and razor blades.

- In the kitchen of the residence, agents found additional plastic and tape packaging material, similar to the kilogram wrappers found in the garage. Cocaine residue was also found on the surface of the kitchen counter.

- In one of the kitchen cabinet drawers, officers found approximately 50 grams of suspected crack cocaine.

- In the master bedroom of the residence, officers found a small amount of suspected powder cocaine, a small amount of suspected crack cocaine, and a powdery substance believed to be utilized as a cutting agent.

- In the master bedroom closet, officers found an AK-47 style assault rifle.

- During a search of a white Ford Taurus in the driveway of the residence, officers found additional quantities of suspected cocaine powder, suspected crack cocaine, and suspected MDMA. During surveillance of defendant Daniel TROYA in the days after the homicide and preceding the search, officers observed him driving this vehicle.

- In the house, officers also found a photograph of Danny VARELA depicted with Jose Luis Escobedo, Jr.

7. Evidence recovered during the search of homicide victim Jose Luis Escobedo, Jr.'s residence link him to defendants Danny VARELA, Ricardo SANCHEZ, and Liana LOPEZ. On one of the suspected drug ledgers seized from Escobedo's residence, the number "-3" appeared next to the initials "D.V" and the letters "pd." After Danny VARELA's arrest on October 25, 2006, he was asked in the course of routine booking questions whether he went by any other names, and he stated that he used the nickname "DV." Another list suspected of being a drug ledger maintained by Escobedo was titled "Money that needs to get paid." On it were written the notations: "1 Rick 2nd trip" and "3 negra 1st trip". Your affiant believes that these are references to defendants Ricardo SANCHEZ and Liana LOPEZ, possibly in connection with previous sales or transport of narcotics. Defendant Ricardo SANCHEZ, Jr. goes by the nickname "Rick," according to information obtained from a reliable confidential source. Additionally, "Negra" is a nickname utilized by defendant Liana Lee LOPEZ. The name "Negra" appeared on the digital display face of LOPEZ's cellular telephone, which was seized incident to her arrest. Also, a photo album was recovered during the search of the Garden Court house, and in that album, the name "Negra" was handwritten next to a photograph of LOPEZ.

8. Also seized from Escobedo's residence were two computer printouts of PBSO booking photographs, one depicting Ricardo SANCHEZ, Jr., and the other depicting Liana Lee LOPEZ. The printouts indicated that the photo of LOPEZ was taken on May 11, 2006, and the photo of SANCHEZ was taken on May 4, 2006. Subsequent investigation revealed that LOPEZ was arrested on or about May 11, 2006, for possession of approximately two kilograms of cocaine, which was located inside a vehicle that she was driving. Your affiant

has reviewed the PBSO Offense/Incident Report regarding LOPEZ's arrest, which indicates that in a statement to officers she advised that the vehicle she was driving belonged to "some guy named Ricardo" who "got locked up on May 4th." In fact, subsequent investigation revealed that Ricardo SANCHEZ had been arrested by PBSO on or about May 4, 2006, for failing to appear in connection with a probation violation.

9. Following his arrest, defendant Juan C. GUTIERREZ waived his Miranda rights and agreed to be interviewed. GUTIERREZ stated that SANCHEZ, TROYA, VARELA, and LOPEZ all resided in the Garden Court house. GUTIERREZ stated that he did not reside there, but occasionally stayed at the residence out of convenience because he did not have a driver's license, and therefore relied upon defendant SANCHEZ for transport to and from work. GUTIERREZ identified Ricardo SANCHEZ as his cousin. He also stated that VARELA and LOPEZ were romantically involved. GUTIERREZ told officers that prior to the murders of the Escobedo family in October of 2006, he and VARELA were at the Escobedo residence for the purpose of assisting Escobedo in destroying and disposing of packaging materials which had previously contained kilogram quantity bricks of cocaine.

10. On the basis of the foregoing facts, your affiant maintains that probable cause exists to believe that from at least as early as on or about May 4, 2006, until on or about October 25, 2006, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants, Danny VARELA (a/k/a "D.V."), Ricardo SANCHEZ, Jr. (a/k/a "Rick"), Daniel TROYA, Juan C. GUTIERREZ and Liana Lee LOPEZ (a/k/a "Negra"), did knowingly and intentionally combine, conspire, confederate and agree with each other to possess with intent to distribute a controlled substance, that is, five hundred (500) grams or more of a mixture

and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

David Weeks, Task Force Officer
United States Drug Enforcement Administration

Sworn to and subscribed before me

this 27th day of October, 2006, in

in Fort Pierce, Florida.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT: Danny Varela (a/k/a "D.V.")

RECOMMENDATION: Pretrial Detention

KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT:  Ricardo Sanchez, Jr. (a/k/a "Rick")

RECOMMENDATION:  Pretrial Detention

KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT:        Daniel Troya

RECOMMENDATION:   Pretrial Detention

KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT:          Juan C. Gutierrez

RECOMMENDATION:     Pretrial Detention

KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT: Liana Lee Lopez (a/k/a "Negra")

RECOMMENDATION: Pretrial Detention

KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-8298-LRJ

IN RE:

CRIMINAL COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?  ___ Yes  _X_ No
   If yes, was it pending in the Central Region?
   ___ Yes  ___ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003?  ___ Yes  _X_ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003?  ___ Yes  _X_ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
KIMBERLY DUNN ABEL
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 0134015
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
TEL (561) 820-8711
FAX (561) 659-4526